Mr. Espinoza suffered a critical error in his case. The complete omission of the requisite knowledge of status element infected his proceedings, requiring relief in at least four ways. First, the district court lacked jurisdiction over the prosecution. Second, the defective indictment deprived Mr. Espinoza of his Fifth Amendment right to indictment by grand jury. Third, the defective indictment deprived Mr. Espinoza of his Sixth Amendment right to real notice of the charges against him. And fourth, because Mr. Espinoza was indisputably uninformed regarding this essential element of the offense, his unknowing and unintelligently made guilty plea is constitutionally invalid, requiring reversal. Most recently, the Fourth Circuit in United States v. Gary addressed this constitutionally invalid plea. In Gary, the court held that a guilty plea cannot be knowing or intelligent where the defendant did not understand all essential elements of the offense to which he pled guilty. Counsel, your structural argument, you didn't raise it in your opening brief, correct? In the opening brief, we did brief it as plain error. That's correct. So why isn't that argument waived? For two reasons, Your Honor. First, I would submit to the court that this is really a developing area of law, rapidly developing area of law following the Supreme Court's decision in Rehaith. I think if the court looks to the opening brief, although we initially framed it as a plain error claim, the underlying rationale and the Supreme Court cases that we later rely on in the reply brief to demonstrate that it's really structural error are there also in the opening brief. But secondly, Your Honor, I would also direct the court to the 28J where we discuss United States v. Gary. Because United States v. Gary was the first court to really address and then hold that this type of error constitutes structural error, I believe that this court may fairly address that argument today. If we wanted to address that issue, do you think that we should ask for more briefing, or do you think we have all the information we need? I do believe that this court has the requisite information in front of it, but I am, of course, more than happy to submit supplemental briefing on the issue. So in Gary, as here, the government acknowledged the Rehaith error, but it urged the Fourth Circuit to look to the PSR to ultimately find that it wasn't reversible error. The Fourth Circuit in Gary explicitly rejected that argument and, in fact, acknowledged this argument were distinguishable in a key respect. That is, Benamor had not considered whether acceptance of a guilty plea without informing a defendant of every element rendered the plea constitutionally invalid. And as Gary persuasively held, Your Honors, it does. Gary relied on Supreme Court precedent and existing and now existing Supreme Court precedent to walk through its analysis. Starting with First and Bousley, the Supreme Court has held that a guilty plea can be constitutionally valid only to the extent that it is knowing and intelligently made. And a guilty plea cannot be intelligently made unless the defendant receives real notice of the charge against them. Therefore, the Supreme Court has been careful to distinguish between purely Rule 11 errors and convictions based on constitutional errors such as the one we have here. And the Supreme Court has made clear in Dominguez Benitez, a conviction based on an invalid guilty plea cannot be saved even by overwhelming evidence that the defendant would have pled guilty regardless. The First and Seventh Circuits have analyzed this under the Rule 11 framework, correct, and rejected these kinds of challenges. Is that not so? I am less familiar with the First and the Seventh Circuit cases, Your Honor, off the top of my head. But to the extent of the First and the Seventh Circuits limited their inquiry solely to the violation of the rule itself, I would submit to this court the challenge that Mr. Espinoza is not so limited. At bottom, Your Honors, Mr. Espinoza had a right to make an informed choice. And whether that choice was to either exercise his right to go to trial and put the government to its burden of proving every element beyond a reasonable doubt or to waive that valuable right and plead guilty, whatever the choice was, it was his alone to make. And by accepting a guilty plea without accurately informing Mr. Espinoza of the full nature of the offense, the district court deprived him of this right to best determine... Usually, after someone pleads guilty, if they want to challenge the plea, it's their burden to show that they wouldn't have pled guilty absent whatever the error is. And it's not clear to me that your client could show that he wouldn't have pled guilty or that he would have had any reason to think that the government wouldn't be able to meet its burden of proof relatedly to that and thus would have pled guilty. So can you speak to why we should treat this differently in terms of whose burden it is? And if we don't treat it differently, how he could possibly meet this burden here? Sure, Your Honor. So I think, while certainly I think the two issues are related, I think Mr. Espinoza raises a slightly different issue that's not simply limited to whether he could have withdrawn his plea. But again, it's more of this overarching constitutional, was his right protected? I think the right to make this informed choice is either protected or it's not. And in this case, Mr. Espinoza was deprived of that choice. Isn't that, as I read Gary, correct me if I'm wrong, what it's saying is that if he's not informed of all the essential elements of the crime, then he doesn't have an adequate basis for assessing whether or not to plead guilty. And that's a structural error of constitutional proportions. And it doesn't matter what he would have done as it would under perhaps a Rule 11 analysis. It's a, it's a, he just wasn't, he never was put to the choice that the Constitution requires him to be put to. That's correct, Your Honor. And that is Mr. Espinoza's argument here today. Thank you. I, you know, I think that Gary, the Fourth Circuit in Gary persuasively, persuasively laid that out and why this type of challenge simply isn't amenable to looking at, you know, probabilities of what the defendant may or may not have done. I would briefly still just in the event the court disagrees, I will just briefly address the second half of your question, Judge Friedland, which is why on this record, how do we know? And again, I would, I would urge that the court need not look to the record, but even if it did, I think we have indicia here. For example, first of all, Mr. Espinoza didn't plead guilty with benefit of a plea agreement, meaning he didn't negotiate any benefit that he was receiving from the government, which counsels against finding that he would have entered the plea anyway. As far as the specific knowledge, it's uncontested. I don't understand that you need to explain to me why that would be. I mean, I think it would actually be the reverse that what he would want to get as a sentencing benefit and his chances of winning going to trial are so small that even without a plea agreement, he wanted to get the sentencing benefit because he would have no chance of winning a trial. So, so explaining to me your Because I think in this case here, I think, I think had Mr. Espinoza, um, pledged with the benefit of an agreement, um, and, uh, negotiated a lower sentence already at the outset from the government, he likely, especially if under the hypothetical that there's, that he knows that there's overwhelming evidence that could perhaps support this missing element. It seems that would be an incentive to nevertheless go ahead and enter the guilty plea, but that's not what we have here. And moreover, your honors, when we do look at what we do have, um, which in this case consists only of a few, uh, a few points in the PSR, I would first note for this court that of course, we have no record as to what Mr. Espinoza was or was not told by prior trial courts at previous sentencing. I would also note for this court that although he has sustained the arson felony conviction, he's never actually spent, at least by my, at least according to what we have here, um, in the record in the PSR, he's never actually spent more than one year continuously in prison pursuant to a crime. So even though it's, I believe, inappropriate for the court to look at this record in this case, even if we do, the knowledge of status isn't there. Did you make the argument in your brief that he never spent a continuous year in prison? Uh, I don't believe, I don't believe we did, your honor. Uh, we rested on that in this case, it's simply inappropriate, um, to look at the record and that the government, um, the government in asking the court to look to the PSR is, is, uh, inappropriate in this case. So I do see that at the end of your time, I'll still give you two minutes for rebuttal, but I think we should turn to the government. Thank you, your honor. Thank you. If it may please the court, Kevin Schiff on behalf of the government to get right into the now very new issue that the defense is raising, that this is a structural error case based upon the Gary decision out of another circuit. As Ms. Kevorkian stated, this is a quickly developing area of law and that case itself is still ongoing. And in this fact, a petition for rehearing and bank has been set for May 8th. And as Judge Freeland mentioned, if the court is inclined to go down this path and address this issue, the government would certainly like to benefit particularly now when all we have are some 20 AJ letters as to some further briefing. But frankly, your honor, I think this case going to the structural error may not be necessary as in rehafe itself, they did not find structural error and remanded the case back to the original circuit for, to determine a harmlessness. And as your honors have already mentioned, looking at the rule 11 portion of this, this is a case where the defendant entered a plea of guilty and at the trial district court, never level, never brought up any objections based upon structural error. At that point, going, letting that go, according to U.S. Fian, it is now a plain error review, which frankly puts us right back to where we are in the original brief, which is a plain error review of whether or not the four level test has met, whether there was error, plain error, whether that error affected the substantial rights and the error seriously affected the fairness and integrity of the public record. I think this court has dealt with this issue a number of times since rehafe came down, but there is one critical fact distinction I would make. Forgive me for interrupting. You said in your letter, and also you just said it again now, that the Supreme Court in rehafe remanded for determination of whether the error was was, quote, the government asked us to hold that any error in the jury instructions in this case was harmless, but the lower courts did not address that question. We therefore leave the question for those courts to decide on remand. I don't see how one can infer from that that they're saying we view this as solely a question of harmless or not, as opposed to a structural error. They're just saying this is a question that wasn't before us, so we're sending it back on that question. They are. Similarly, I think in this case, this question was not before this court until the 20HA letter. And regardless, again, my reading of rehafe is they did not take opportunity to find a structural error. But again, going to the Rule 11 precedent issue, when someone pleads guilty and then makes no structural error objections on the front end, and then later tries to come back and claim structural error, again, in a 20HA letter, the court should go back to our original standard in all the briefings, which was the plain error cases that this court has already reviewed on this issue, is in many of the cases the date of offense, the conviction, whether that be via plea or guilty and sentencing, all took place prior to the rehafe decision issuing. In this case, the offense conduct in Mr. Espinosa entering his plea took place prior to rehafe, but the sentencing itself took place after rehafe actually issued, just, I believe, a matter of four days. Now, in my opinion, this does not change the analysis that the court must engage in. But if one thing, it does aver against the defendant's assertion that this is some sort of new case law they did not see coming, and that Mr. Rehafe was uninformed of the decision, or sorry, uninformed of the charges against him and had no opportunity to basically explore with his counsel if there's some now a new additional element of which they could have fought. The fact of the matter is it was not... ...withdrawn his plea at the sentencing, even though he'd already pled? Yeah, I think it would have gave him, yes, legal basis to either move to withdraw from the plea, or at the very least, move to continue the sentencing to review what was a new, a brand new Supreme Court decision that had come down. Why isn't the burden really more on the district court in that situation? Didn't the district court have an affirmative duty, regardless of whether it was raised by him to say, oh, you know, I just read this case from the Supreme Court that came down four days ago, and I see now that I have to go back and reopen the guilty plea. Isn't that where the burden properly should lie? Again, our opposition would be under Rule 11 when the defendant decided to enter a guilty plea  plead guilty or not properly informed of the charge against them. The burden should have been on Mr. Espinoza to raise that. And as to the court in this case, the court was very, at the change of plea, was very particular with Mr. Rehafe as far as what exactly it is he was pleading guilty to. And this is addressed in the government's brief during the change of plea. The following exchange took place. All right. In October 4, 2018, you had been previously convicted of a crime punishable by a term of imprisonment exceeding one year. In other words, you were a felon at the time. And Mr. Espinoza responded, yes, ma'am. Based on that record, I think the court would have every reason to believe that Mr. Espinoza, especially by being very particular with him, that previous to the date of offense, meaning he couldn't have been convicted that morning of a crime, he had been convicted of a crime punishable by more than a year. I think based upon that record and what came forward in the PSR, there's no reason the court to think that we'd be in a situation now where essentially Mr. Espinoza would be arguing. He was unaware of the fact that he had these convictions and was prohibited from possessing a firearm. And the court could even, in that context, look to the underlying conduct in this case, which is, Mr. Espinoza, the police attempted to stop Mr. Espinoza. He took off running for no apparent reason other than the fact that he was in legal possession of a firearm, a firearm which he then withdrew and threw to presumably to be, so the police would not find it. And even though the police saw him do this, when asked about the firearm, he denied having it, which again would infer that Mr. Espinoza had knowledge that he was legally prohibited from possessing that firearm. And, Your Honor, did the, one thing I did also want to address, I know the court has not asked any questions about it as of yet, but another question raised is the question of whether or not Mr. Espinoza has previously been convicted as a crime of violence. And that is for a conviction for Nevada arson in the third degree. I think the simple question really for that part of this  of a crime of violence. Could someone commit arson in the third degree in Nevada in such a way that would not also be arson under the generic federal law? And the government would contend no, in fact that Nevada arson is much narrower than federal law and that virtually all of the citation provided by Mr. Espinoza in furtherance of his brief actually furthers the government's point, which is Nevada has taken extra steps in how it defines burning or in a very recent Supreme Court case, even how it defines and narrows what maliciously means, makes it even narrower and narrower to a point that there's really no conceivable way a person can give it, can commit Nevada arson without having committed the generic federal arson. So in fact, it's Nevada arson third degree is inclusive by quite a bit of the generic federal arson and that the district court's finding that it was a crime of violence under the guidelines was a correct decision. Could you speak to the supervised release condition and whether the probation officer has any less discretion under this condition than the probation officer had and the condition considered in Evans? Yeah, I think what the decision in Evans did was essentially took the discretion down and fashioned that condition specifically for the probation department going forward, which was basically this idea of someone doesn't have to disinform anybody or probation doesn't have this burden on them that like if they're a sex offender or a person who had child porn, if they find themselves next to a child, they don't have to inform the person that could be at risk. What Evans did is essentially limited to what exactly condition 12 says and appears to be approved by Evans, which is the probation officer may require the defendant to inform a specific entity or person that the defendant is a risk to them or the probation officer themselves may inform that entity or person of the risk. So that speaks to the notice to the defendant of what the defendant might need to say and that's one of the things that Evans talked about, but I read Evans to also express a concern about probation officers having too much discretion to decide what is a risk and I don't really understand how this condition is better in that respect. Well, from what I understand your honor, the issue in Evans was that the original language for that condition was so vague is that the probationer himself was not really put on notice as what was expected for him or this is more specific in the sense of the probation officer is going to put essentially the probationer on notice of that this is a thing that may come up and by doing so the probationer himself is going to be aware of what he signed up for as his conditions and the fact that this may be an issue that may come up with his probation officer and I would contend if the probation officer did inform the defendant this was needed to happen, the defendant would still have some recourse whether that be a motion to modify conditions of probation or to challenge the fact that this risk notification was to take place. But I think the important factor being the probationer is going to know what exactly is expected of him via his probation officer and will have the opportunity to address it then I know my time is up. Thank you, counsel. We'll take two minutes for rebuttal. Thank you, your honor. To jump back in to the plea issue, I think the critical point for Mr. Espinoza is that nothing in this record demonstrated that at the time he entered his plea he was making an informed, knowing, and voluntary choice in order to do so. And it's because he lacked that knowing and intelligent ability to enter his plea at that time that's what renders it unconstitutional. And again, the inquiry here isn't to look to the strength of the government's case and I would direct the court again to Dominguez Benitez, the Supreme Court case, which made clear it specifically contrasted just a run-of-the-mill Rule 11 error with a constitutional error of this magnitude when we're dealing with an invalid plea. Even if this court, however, is not inclined to either rule on the structural error issue or is not inclined to look to supplemental briefing, even under plain error review, Mr. Espinoza, under this court's case law, still warrants reversal in this case. And I would urge this court to look to its decision in United States v. Peña where this court specifically contrasted minor or technical Rule 11 errors from errors such as this one that implicate a core concern of Rule 11, a core concern being an error of such constitutional magnitude that it simply cannot stand. Whatever the path Mr. Espinoza could have taken, he had the right to make an informed choice here and that informed choice lied with him alone. Because his plea was unquestionably uninformed, his conviction cannot stand. For those reasons, we would ask the court to vacate his conviction, vacate his plea, and remand to the district court for further proceedings. Thank you, Your Honor. Thank you both sides for the helpful arguments. The case is submitted.
judges: Friedland, Bennett, Rakoff